UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA STROHMER,

     Plaintiff,

v.                          Case No. 24-10921

THE KROGER COMPANY,       Sean F. Cox
                                  United States District Court Judge

     Defendant.

_____/

## OPINION & ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13)

Plaintiff filed this action against her former employer, asserting a promissory estoppel claim and a claim for intentional infliction of emotional distress. Discovery has closed and the matter is now before the Court on Defendant's summary judgment motion. The parties have briefed the issues and the Court concludes that a hearing is not necessary. Local Rule 7.1. As explained below, the Court GRANTS Defendant's Motion for Summary Judgment. Both of Plaintiff's state-law claims are preempted by Section 301 of the Labor Management Relations Act. In addition, even if they were not preempted, both claims would fail on the merits.

## BACKGROUND

Plaintiff Rebecca Strohmer filed suit against Defendant The Kroger Company in state court and Defendant removed it to this Court, based upon both diversity and federal-question jurisdiction.

Plaintiff's original complaint is the operative complaint. In it, Plaintiff asserts the following two counts: 1) "Promissory Estoppel" (Count I); and 2) "Intentional Infliction Of

1

Emotional Distress" (Count II).

Following the close of discovery in this case, Defendant filed the instant summary

judgment motion.

This Court's practice guidelines and Scheduling Order provide, consistent with Fed. R.

Civ. P. 56 (c) and (e), the following as to summary judgment motions:

> a. The moving party's papers shall include a separate document entitled
> Statement of Material Facts Not in Dispute. The statement shall list in separately
> numbered paragraphs concise statements of each undisputed material fact,
> supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled
> Counter-Statement of Disputed Facts. The counter-statement shall list in
> separately numbered paragraphs following the order or the movant's statement,
> whether each of the facts asserted by the moving party is admitted or denied and
> shall also be supported by appropriate citations to the record. The Counter-
> Statement shall also include, in a separate section, a list of each issue of material
> fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute
> shall be deemed admitted unless controverted in the Counter-Statement of
> Disputed Facts.

(Scheduling Order at 2-3).

In compliance with the Court's practice guidelines, Defendant filed a "Statement Of

Material Facts Not In Dispute" (ECF No. 14) ("Def.'s Stmt.") along with its summary judgment

motion.

Plaintiff failed to file a timely response to the motion. After this Court issued a Show

Cause Order, requiring Plaintiff to show cause in writing why the unopposed motion should not

be granted (ECF No. 15), Plaintiff then filed a brief in response to the motion. Plaintiff failed to

comply with this Court's practice guidelines and did not file a separate counter-statement of

disputed facts.

2

Rather, within her response brief, Plaintiff made the following assertions – not supported by any citation to record evidence:

Counter-Statement Of Material Facts

1.      Plaintiff called her store manager every month to discuss when she would be ready to return to work.  (Complaint, Paragraph 7).
2.      Plaintiff was told she could return to work when ready.  (Complaint, Paragraph 7).
3.      The store manager no longer works for Defendant and gave no testimony, so all assertions regarding his testimony are speculation.
4.      The facts involved in Plaintiff's termination after twenty-two years of employment and the sudden death of her daughter clearly caused her emotional distress.

(Pl.'s Br. at 2).  Plaintiff did not submit any evidence, such as affidavits, deposition transcripts, or other documents, in support of her response brief.  As Defendant notes in its reply brief, Plaintiff cannot rely on allegations in her complaint in opposing a summary judgment motion.

The only evidence before the Court is that evidence provided by Defendant.  The following relevant evidence, submitted by Defendant, is undisputed.

Defendant Kroger operates a grocery retail store chain throughout the United States, including stores in Michigan.

Plaintiff was employed by Kroger in Michigan.  Plaintiff began her employment with Kroger in April of 2000.  (Pl.'s Dep. at 9).  At all relevant times, Plaintiff was a member of the United Food & Commercial Workers Union Local 876 ("Local 876").  (Pl.'s Dep. at 10).

Kroger maintains a written "Associate Handbook" for its Michigan Division ("the Handbook").  (Def.'s Ex. A, ECF No. 13-2).  Plaintiff signed an acknowledgment that she received a copy of the Handbook.  (Def.'s Ex. B).

The Handbook provides that if an employee is going to be off work for more than three

3

days, the employee will have to be on approved leave from Kroger's Leave Administrator.

(Def.'s Ex. A at PageID.75). It further provides that Local 876 Union employees should notify

Kroger human resources administrator for approval for personal leaves. (*Id*. at PageID.79).

Under Kroger's Handbook, a personal leave is limited to 30 days maximum "without

exception." (*Id*. at Pzge ID.77). It provides that an employee on personal leave must keep the

store manager up to date on expected plans for returning to work. (*Id*. at PageID.79). The

Handbook provides that an employee fails to return to work after a leave of absence, the

employee will be terminated:

> FAILURE TO RETURN FROM LEAVE OF ABSENCE
>
> Failure of an associate to return to work from any approved leave of absence will constitute a voluntary resignation from the Company and the associate will be terminated as of the last approved date of the leave.

(*Id*. at PageID.83).

During the relevant time periods, Kroger and Local 876 were parties to a written

collective bargaining agreement ("the CBA"). (Def.'s Ex. D, ECF No. 13-5). The CBA contains

the following provisions:

> Employees may be granted a personal leave of absence, not exceeding thirty (30) days, upon the Employer's permission, and shall be granted a leave of absence for their certified illness (including, but not limited to, pregnancy, miscarriage, childbirth, and recovery there from), not exceeding six (6) months.
> . . . .
> Employees returning from illness, injury and/or approved leave of absence shall notify the manager by Wednesday noon of their availability for work the following week.

(*Id.* at PageID.113). It also provides:

> The management of the business and the direction of the working forces, including the right to plan, direct and control store operations, hire, suspend, or discharge for proper cause, transfer or relieve employees from duty because of

4

lack of work or for other legitimate reasons, the right to study or introduce new or improved production methods or facilities, and the right to establish and maintain rules and regulations covering the operation of the stores, a violation of which shall be among the causes for discharge, are vested in the Employer, provided, however, that this right shall be exercised with due regard for the rights of the employees and provided further that it will not be used for the purpose of discrimination against any employee.

(*Id.* at PageID.112).

On September 14, 2022, Plaintiff's daughter passed away. (Pl.'s Dep. at 12). That day, September 14, 2022, was the last day that Plaintiff ever worked at Kroger. (Pl.'s Dep. at 11).

Following her daughter's death, on or about September 29, 2022, Plaintiff requested a personal leave of absence from October 2, 2022, until October 23, 2022. (Def.'s Ex. E, ECF No. 13-6). Kroger, through its third party leave administrator, approved Plaintiff's request for personal leave from October 2, 2022, until October 23, 2022. (Def.'s Ex. E, ECF No. 13-7).

Plaintiff was approved for Family Medical Leave Act ("FMLA") leave from September 14, 2022 through December 7, 2022 and was approved fro Short-Term Disability ("STD") until March 14, 2023. (Def.'s Ex. G, ECF No. 13-8).

Plaintiff understood that she needed to go through Kroger's leave administrator, MetLife, to have her leave further approved. (Pl.'s Dep. at 37).

Plaintiff did not return to work following the expiration of her STD on March 14, 2023. (Pl.'s Dep. at 11). On April 21, 2023, Kroger sent Plaintiff a letter informing Plaintiff that she was on an unapproved leave of absence and was advised that if she did not provide medical support for her leave, or return to work within 14 days, that her employment would be terminated. (Def.'s Ex. H, ECF No. 13-9).

Plaintiff testified that was told that she was terminated in April or May of 2023. (Pl.'s

Dep. 11).

Melissa Trevino, one of Kroger's Human Resources employees, processed Plaintiff's termination. (Trevino Dep. at 5-6). Kroger's absence specialist Jonathan Smith authorized Plaintiff's termination. (*Id.* at 7). Trevino testified that she entered Plaintiff's termination into Kroger's system because Plaintiff failed to respond to the April 21, 2023 letter that instructed Plaintiff to contact Kroger within fourteen days. (Trevino Dep. at 7-9).

Trevino testified that she was not aware that Plaintiff's daughter had passed away. (Trevino Dep. at 9). Trevino further testified that would not have altered the termination decision because, under the CBA, termination is required after six months. (*Id.* at 9).

After her termination, Plaintiff filed a union grievance. (Pl.'s Dep. at 12-14). The Union ultimately found the grievance was without merit and declined to pursue it further. (*Id.* at 14).

Plaintiff later filed this action against Kroger.

During her deposition in this case, Plaintiff testified that she wanted her job back and that she does not claim that Kroger caused her to suffer emotional distress. (Pl.'s Dep. at 43-44).

## STANDARD OF DECISION

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable

6

jury could return a verdict for the nonmoving party.' " *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As the party bringing the summary judgment motion, Defendant "has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted).  When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Sixth Circuit has explained that "Rule 56 places an affirmative duty on the nonmovant to cite to 'particular parts of materials in the record' to establish that a particular fact cannot be supported or is genuinely disputed. Fed.R.Civ.P. 56(c)(1); *see Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir.2007)."  *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 734 (6th Cir. 2011).  "District courts need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment."  *Emerson, supra*.

## ANALYSIS

In its summary judgment motion, Defendant seeks summary judgment in its favor as to all claims and raises a number of challenges.  The Court need not address them all.

## I.    Plaintiff's State-Law Claims Are Preempted By Section 301 Of The LMRA.

As its first challenge, Defendant Kroger asserts that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").

Notably, Plaintiff's response brief does not address this threshold issue, aside from answering "no" in its questions presented section. That is, Plaintiff's brief does not analyze the issue or explain how or why her claims in this case are not preempted by Section 301 of the LMRA.

The Court concludes that both of Plaintiff's claims in this action are preempted by Section 301 of the LMRA.

"Section 301 of the LMRA preempts 'state law-based actions [that are] inextricably intertwined with consideration of the terms' of a CBA." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 592 (6th Cir. 2014) (quoting *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004)). As explained by the Sixth Circuit:

> Preemption under § 301 of the LMRA applies not only to contract-based claims, but also to state-law tort claims. *Id.* To decide whether a state-law claim is preempted by the LMRA, we perform a two-step inquiry. The first step requires us to determine "whether resolving the state-law claim would require interpretation of the terms" of the CBA. *Id.* at 906. If interpretation of the CBA would be required, then the state-law claim is preempted and the inquiry is at an end. *Id.* The second step involves ascertaining "whether the rights claimed by the plaintiff were created by the [CBA], or instead by state law." *Id.* If the rights were created by the CBA, then the state-law claim is preempted. *Id.*

*Loyd,* 766 F.3d at 592.

### A.    Promissory Estoppel Claim

Defendant persuasively argues that Plaintiff's promissory estoppel claim is preempted by Section 301 because it requires interpretation of the CBA's terms and provisions:

> The CBA is an express contract that controls the parties' relationship and Article 18, Sec. C of the CBA controls how long employees, like Plaintiff, are allowed to take personal leave (not to exceed 30 days) and how long employees,

8

like Plaintiff, are permitted to take a leave of absence for a certified illness (not to exceed six months), and controls when Kroger is required to grant leaves and when they are allowed to terminate employees for exceeding the allotted leave time. (Ex. D, at p. 23).

Plaintiff alleges that she suffered major depressive episodes (i.e. certified illness) and relied on an alleged promise concerning her return to work (but provided no supporting evidence). (Plt.'s Complt. at  5, 7) Because Plaintiff's promissory estoppel claim is premised on her return from work following a leave of absence and a union employee's, like Plaintiff's, return to work, both for personal and medical leaves, is controlled by the CBA, (Ex. D, at p. 23), Plaintiff's promissory estoppel claim must be dismissed because the Court would necessarily have to interpret the CBA to determine Plaintiff's rights and Kroger's duties following Plaintiff's leave of absence.

Further, Article 4 of the CBA controls Kroger's ability to "establish and maintain rules and regulations" and the "causes for discharge". (Ex. D, at p. 5). Thus, to determine if Kroger correctly maintained its rules and regulations, it would require the evaluation and interpretation of the CBA. Plaintiff's right to return to work following leave is controlled by the CBA, not by state law. For those reasons, Plaintiff's promissory estoppel claim is preempted by Section 301 of the LMRA.

(Def.'s Br. at 9-10).  Defendant notes that similar promissory estoppel claims have been held to be preempted in numerous cases.  (*Id*.).

The Court rules that Plaintiff's promissory estoppel claim in this case is preempted by Section 301 of the LMRA because the alleged representations on which Plaintiff allegedly relied were contrary to the express written terms of the CBA.  *See, eg., Blessing v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 244 F. App'x 614, 621 (6th Cir. 2007) (affirming district court's ruling that promissory estoppel claim was preempted where the alleged representations on which plaintiffs allegedly relied were directly contrary to the language of the CBA.)

### B.      Claim For Intentional Infliction Of Emotional Distress

Defendant also persuasively argues that Plaintiff's claim for intentional infliction of emotional distress is preempted because Plaintiff's termination was controlled by the terms of

the CBA:

> In her Complaint, Plaintiff alleges that her termination was "extreme and outrageous" behavior. (Plt.'s Complt. at   13). Courts have consistently held that where a plaintiff's termination is the basis of an intentional infliction of emotional distress and the termination was controlled by the terms of a CBA, that the state law intentional infliction of emotional distress is preempted. Here, Plaintiff's termination was controlled by the terms of the CBA. (Ex. D, at p. 5, 23). *Wright v. BellSouth Telecomms., Inc*., 1999 U.S. App. LEXIS 34509, *4-5 (6th Cir. Dec. 29, 1999)("We further conclude that Wright's intentional infliction of emotional distress claims are preempted by § 301 of the LMRA to the extent that the claims were grounded in BST's alleged outrageous acts of disciplining[.]"); *Mattis v. Massman*, 355 F.3d 902, 908 (6th Cir. 2004)(dismissing intentional infliction of emotional distress claim when "all involve workplace actions taken under the ostensible authority of the CBA"); *Callender v. Wilberforce Univ.*, 2007 U.S. Dist. LEXIS 89226, *16 (S.D. Ohio Dec. 4, 2007)("LMRA § 301 also preempts Callender's intentional infliction of emotional distress claim because a determination of "outrageous" conduct would require interpretation of the "just cause" provision of the CBA and because Callender has not alleged that she was terminated in a particularly abusive manner."); *Went v. Lafarge Corp*., 136 F. Supp. 2d 741, 743 (N.D. Ohio March 15, 2001)(finding Section 301 preemption when "in determining whether an employer pursued his legal rights under a CBA 'in a permissible way,' a court necessarily must refer to the agreement."); *Lucia v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 29443, *15 (E.D. Mich. March 7, 2014)(holding that intentional infliction of emotional distress claim is preempted because it would require the Court to refer to the CBA).
>
> Thus, because this Court must interpret the leave and management rights policies under the CBA to determine if Plaintiff was correctly terminated under the CBA, Plaintiff's intentional infliction of emotional distress claim is completely preempted and must be dismissed.

(Def.'s Br. at 11-12).

The Court rules that Plaintiff's claim for intentional infliction of emotional distress is

also preempted.

## II.    Even If They Were Not Preempted, Both Of Plaintiff's Claims Would Still Fail On The Merits.

Defendant's motion further asserts that, even if they were not preempted, Plaintiff's

claims fail for other reasons too.

10

**A.      Promissory Estoppel**

Count I of Plaintiff's complaint asserts a promissory estoppel claim under Michigan law. In support of that claim, Plaintiff alleges in her complaint that an unidentified store manager told Plaintiff that Defendant "would hold her job for her" or "hold her job open for her."  (Compl. at ¶¶ 7 & 9).

A promissory estoppel claim under Michigan law requires: 1) a promise; 2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; 3) which in fact produced reliance or forbearance of that nature; 4) in circumstance such that the promise must be enforced if injustice it be avoided.  *United States ex rel. Guzall v. City of Romulus*, 743 F. App'x 574, 582 (6th Cir. 2018) (citations omitted). "Michigan precedent emphasizes that the promise must be clear and definite and subsequent reliance must be reasonable." *Id.*; *see also Gason v. Dow Corning Corp.*, 674 F. App'x 551, 559 (6th Cir. 2017) (quoting *State Bank of Standish v. Curry*, 442 Mich. 76 (1993) (explaining that the doctrine of promissory estoppel in Michigan is "cautiously applied" and its "sine qua non" is the "the promise be clear and definite.").

In addition, Promissory estoppel may not be used to override the express terms of a written agreement that covers the same subject matter. *APJ Assocs., Inc. v. North Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) (citation omitted).  Thus, no action for promissory estoppel may lie when an alleged oral promise expressly contradicts the language of a binding contract. *Cece v. Wayne County*, 758 F. App'x 418, 424 (6th Cir. 2018).

Here, Defendant Kroger asserts that Plaintiff's promissory estoppel claim fails for several reasons, including: 1) there has been no evidence presented that a clear and definite promise was

11

made to Plaintiff by anyone at Kroger regarding holding her job open; 2) even if any promise that contradicted the CBA and Handbook had been made to Plaintiff, it would have been unreasonable because the alleged promise contradicts the terms of those express written documents.

In response to the motion, Plaintiff does not identify *any evidence* to establish that anyone at Kroger made an alleged promise to hold her job open for her. Rather, she simply references the allegations in her complaint. That is insufficient when responding to a summary judgment motion. And Plaintiff does not address that the alleged promise expressly conflicted with the governing terms of the CBA and, as a result, her promissory estoppel claims for that reason too.

The Court concludes that, even if it was not preempted, Defendant Kroger is entitled to summary judgment in its favor as to Plaintiff's promissory estoppel claim.

### B.    Intentional Infliction Of Emotional Distress

Count II of Plaintiff's complaint asserts a claim for intentional infliction of emotional distress under Michigan law. To the extent that tort is recognized in Michigan, a plaintiff must establish all of the following: 1) extreme and outrageous conduct; 2) intent or reckless; 3) causation; and 4) severe emotional distress. *Watkins v. City of Southfield*, 221 F.3d 883, 890 (6th Cir. 2000) (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594 (1985)).

Liability will only be imposed "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" *Roberts, supra* (quoting Restatement, Torts, 2d § 46, comment d)). "Hence, a plaintiff will only be able to recover for intentional

12

infliction of emotional distress 'in the most egregious of cases.'" *Watkins*, 221 F.3d at 890 (quoting *Bonelli v. Volkswagen of America, Inc*., 166 Mich.App. 483, 421 N.W.2d 213, 228 (1988)).

Here, Defendant Kroger asserts that Plaintiff's intentional infliction of emotional distress claim fails for several reasons, including: 1) there is no evidence of extreme and outrageous conduct on the part of Kroger; and 2) there is no evidence that Plaintiff suffered severe emotional distress as a result of Defendant's conduct.

In response to Defendant's summary judgment motion, Plaintiff does not direct the Court to any evidence to support her claim. Rather, she simply references facts alleged in her complaint and asserts that an issue of fact exists. Again, that is insufficient.

The Court concludes that, even if its was not preempted, Defendant Kroger would be entitled to summary judgment in its favor as to this claim.

There is no evidence of extreme and outrageous conduct on the part of Kroger. Rather, the evidence before the Court reflects that, after Plaintiff's daughter passed away, Defendant Kroger approved her requested leaves of absence. After Plaintiff failed to return to work after her approved leaves expired, Kroger warned Plaintiff in writing that she was on an unapproved leave of absence and that if she did not provide medical support for her leave, or return to work within 14 days, that her employment would be terminated.

In addition, Plaintiff has presented no evidence to establish that any conduct on the part of Kroger caused Plaintiff to suffer severe emotional distress. And as Kroger notes, during her deposition in this case, Plaintiff testified that she wanted her job back and that she does not claim that Kroger caused her to suffer emotional distress. (Pl.'s Dep. at 43-44).

13

Accordingly, even if the claim was not preempted, it would still fail.

## CONCLUSION & ORDER

For these reasons, the Court ORDERS that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: February 13, 2025            s/Sean F. Cox
                                    Sean F. Cox
                                    United States District Court Judge

I hereby certify that on February 13, 2025, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                    s/Emily Vradenburg
                                    Case Manager

14